ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br><br>Recurridos<br><br>v.<br><br>**JONATHAN D. SÁNCHEZ SANTIAGO**<br><br>Peticionarios | KLCE202301449 | **CERTIORARI**<br>procedente del Tribunal de Primera Instancia, Sala Superior de **Caguas**<br><br>Civil Núm.:<br>**E IS2008G0001**<br>**E IS2008G0002**<br><br>Sobre:<br>INFR. ART. 144 CP (2CS) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Cintrón Cintrón, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero de 2024.

Comparece Jonathan D. Sánchez Santiago (Sánchez Santiago o peticionario) y solicita que revisemos la *Resolución* emitida por el Tribunal de Primera Instancia (TPI), Sala Superior de Caguas, el 4 de diciembre de 2023. Mediante la misma, el TPI declaró *No Ha Lugar* la solicitud de eliminación de datos del Registro de Personas Convictas por Delitos Sexuales y Abuso contra Menores (Registro de Ofensores Sexuales) presentada por el peticionario.

Por los fundamentos que expondremos a continuación, resolvemos expedir el auto de *certiorari* y confirmar la *Resolución* recurrida.

### I.

Según surge del expediente, por hechos ocurridos en octubre de 2007, el Ministerio Público presentó dos (2) acusaciones contra Sánchez Santiago por el delito de agresión sexual, tipificado en el Artículo 142 del Código Penal de 2004. De ambas acusaciones se desprende que, al momento de los hechos, la víctima tenía 14 años.

El 17 de abril de 2008, Sánchez Santiago y el Ministerio Público instaron una *Moción sobre Alegación Pre Acordada,* a través de la cual se reclasificaron los cargos de agresión sexual a unos de actos lascivos, tipificado en el Art. 144 (b) del mencionado Código Penal. En consecuencia, Sánchez Santiago hizo alegación de culpabilidad y, el 8 de agosto de 2008, fue sentenciado en cada cargo a una pena de tres (3) años y un (1) día de cárcel, a cumplirse concurrentes entre sí, de manera suspendida. Además, como parte de las condiciones especiales de su sentencia, el Tribunal ordenó, entre otras cosas, lo siguiente:

1. Deberá registrar el nombre en el Registro de Ofensores Sexuales.
2. [...]
3. No podrá intervenir, ni comunicarse por ningún medio con la menor, no con las partes perjudicadas.
4. No mantendrá comunicación con menores sin la supervisión de un adulto.

   [...]

El 1 de noviembre de 2023, Sánchez Santiago incoó una *Solicitud de Eliminación de Lista de Ofensores Sexuales* ante el TPI. Al respecto, argumentó que no fue sentenciado por el inciso del Art. 144 del Código Penal de 2004 relativo a los actos contra una menor de edad y que, a esa fecha, cumplió su pena. Destacó que, bajo la Ley de Registro de Ofensores Sexuales, según enmendada, procedía que se eliminara su nombre del Registro de Ofensores Sexuales, toda vez que el delito por el cual fue convicto no conllevaba la inscripción en éste. Esgrimió que la inscripción en dicho registro público tenía un efecto negativo en el desarrollo de los convictos que demostraban rehabilitación y desean ser ciudadanos de provecho en la sociedad.

Así las cosas, luego de evaluar la petición de Sánchez Santiago, en específico los pliegos acusatorios y lo dispuesto por el Tribunal Supremo de Puerto Rico en *Pueblo v. Toro Vélez,* 2023 TSPR

115 (Sentencia) y las respectivas opiniones de conformidad,[1] el TPI dictó el pronunciamiento que hoy revisamos. En este determinó que no procedía la eliminación de los datos de Sánchez Santiago del Registro de Ofensores Sexuales por no haber transcurrido el término dispuesto en la Ley aplicable para un Ofensor Sexual Tipo II.

En desacuerdo con la decisión del foro primario, Sánchez Santiago comparece ante nosotros mediante el recurso que nos ocupa y alega que el TPI cometió el siguiente error:

> Erró el Tribunal de Primera Instancia, Sala Superior de Caguas al declarar No Ha Lugar la solicitud del peticionario de ser excluido del Registro por tomar en cuenta los delitos imputados en las acusaciones originales y no las convicciones del peticionario, pasando por alto el lenguaje claro e inequívoco de la Ley Núm. 243.

Con el beneficio de la comparecencia de la Oficina del Procurador General de Puerto Rico, en representación del Pueblo de Puerto Rico, procedemos a resolver.

## II.

La *Ley del Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso contra Menores* del 1 de julio de 1997, Ley Núm. 28-1997, según enmendada, creó el Registro de Ofensores Sexuales. Ello, con el propósito de mantener informadas a las autoridades gubernamentales y la ciudadanía sobre el paradero de aquellas personas convictas que luego se reintegraban a la libre comunidad. Art. 1 de la Ley Núm. 28-1997.[2] La antedicha Ley ordenaba la inscripción en el Registro de las personas que fueran convictas por delitos (o su tentativa) de violación y actos lascivos o impúdicos, entre otros, cuando la víctima fuese menor de 18 años, conforme al derogado Código Penal de Puerto Rico de 1974. Art. 3(a) de la Ley Núm. 28-1997, 4 LPRA sec. 535(a). La persona convicta se

---

[1] Resuelto el 25 de septiembre de 2023.

[2] Esta ley se aprobó para cumplir con la ley federal, *Jacob Watterling Crimes Against Children and Sexually Violent Offender Registration Program*, 42 USC secs. 14071 *et seq.* (conocida como la *Megan's Law*).

mantendría en el Registro por un período mínimo de 10 años, contados desde que la persona cumpliera la sentencia de reclusión, desde que comenzase a cumplir la sentencia bajo el beneficio de libertad a prueba o desde que fuese liberada bajo palabra. Art. 5 de la Ley Núm. 28-1997, 4 LPRA sec. 535c. Transcurrido ese término, el nombre y los datos de la persona serían eliminados del Registro. *Íd.*

Posteriormente, el 9 de septiembre de 2004, se aprobó la Ley Núm. 266-2004, conocida como *Registro de Personas Convictas por Delitos Sexuales y Abuso de Menores*, la cual derogó la Ley Núm. 28-1997. Esta nueva ley dispuso que el Estado, en su función de *parens patriae*, tenía el deber de "continuar ampliando el marco de acción y adoptar un enfoque de carácter preventivo" mediante la "recopilación y divulgación de información relativa a las personas convictas de delitos sexuales y abuso contra menores". Exposición de Motivos de la Ley Núm. 266-2004.[3]

En lo pertinente a la controversia que nos atañe, en *Pueblo v. Ferrer Maldonado*, 201 DPR 974, 984 (2019), el Tribunal Supremo de Puerto Rico enunció que:

> En cuanto a la aplicación de esta ley para las personas obligadas a registrarse, según la Ley Núm. 28-1997, la Ley Núm. 266-2004 dispuso que "quedar[ían] registradas las personas que al momento de la aprobación de [la] ley, tenían la obligación de estar registrados bajo la [Ley Núm. 28-1997]". Art. 3(d) de la Ley Núm. 266-2004 (4 LPRA 536a(d) [ed. 2010]). Asimismo, establecía que "no tendr[ían] la obligación de registrarse las personas que, al momento de aprobarse [la] ley, hayan extinguido la pena impuesta por la comisión de alguno de los delitos enumerados". *Íd.* Por otra parte, en cuanto al término por el cual la información de la persona convicta se mantendría en el Registro, esta decretaba que sería "por un periodo mínimo de diez (10) años desde que se cumplió la sentencia impuesta". Art. 5 de la Ley Núm. 266-2004 (4 LPRA 536c [ed. 2010]). A diferencia de su antecesora, esta nueva ley aplicaba desde que se extinguía la sentencia y no hacía una distinción, en cuanto al

---

[3] La ley no tiene un propósito punitivo. Sirve como un medio para garantizar la seguridad, protección y bienestar general de los sectores más vulnerables y merecedores de protección de nuestra sociedad. Art. 1 de la Ley Núm. 266-2004.

cómputo para el término de los diez años de inscripción en el Registro, entre si la persona convicta cumplía su sentencia en la libre comunidad, al amparo de algún beneficio de sentencia suspendida o, por el contrario, estaba recluida en una institución penitenciaria.

No obstante, la Ley Núm. 243-2011 enmendó ciertos aspectos de la Ley Núm. 266-2004.[4] Tras reiterar que el Registro de Ofensores Sexuales no tiene un propósito punitivo, se crearon tres (3) clasificaciones para los ofensores sexuales de acuerdo con el delito sexual cometido. Bajo estas clasificaciones, el término mínimo para el Ofensor Sexual Tipo I conlleva permanecer en el Registro por 15 años, mientras que el Ofensor Sexual Tipo II deberá estar inscrito durante 25 años. En el caso del Ofensor Sexual Tipo III, debe permanecer en el Registro durante toda la vida. *Pueblo v. Ferrer Maldonado*, supra, pág. 985; 4 LPRA sec. 536c.[5] En particular, con la nueva enmienda se eliminó el término uniforme de 10 años que se contemplaba anteriormente y se reemplazó por un término específico, según la gravedad de los delitos.

Compete resaltar que, con la Ley Núm. 243-2011, se restituyó el momento desde cuando se comenzaría a contar el término de inclusión de la persona en el Registro, según la sentencia impuesta. Es decir, se volvió a hacer la distinción entre las personas que cumplen su sentencia en una institución correccional y aquellas que la cumplen en la libre comunidad. Para los que cumplen su sentencia en la cárcel, la ley dispone que el término comienza a transcurrir "desde que el ofensor sexual sea excarcelado". Por otro lado, para los que la cumplen en la libre comunidad, este se calcula

---

[4] Se enmendó para atemperar las disposiciones de la Ley Núm. 266-2004 a aquellas de su homóloga federal, la *Adam Walsh Child Protection and Safety Act of 2006*, también conocida como *Sex Offender Registration and Notification Act (SORNA)*, 42 USC secs. 16901 *et seq.*

[5] La ley clasifica como un Ofensor Sexual Tipo III a una persona que resulte convicta por los delitos, su tentativa o conspiración, de: violación, seducción, sodomía, actos lascivos a menores de edad, incestos, secuestro o robo de menores de edad, conforme al Código Penal de 1974; las modalidades de agresión sexual no mencionadas para los Ofensores Sexuales Tipo II; actos lascivos contra menores de trece años, y secuestro de menores de edad. Además, quedan incluidos aquellos Ofensores Sexuales Tipo II convictos anteriormente de algún delito sexual. Véase, 4 LPRA sec. 536 (10).

"desde que se dicta la sentencia, resolución o determinación para participar de [los] programas [de libertad a prueba, libertad bajo palabra o programas de desvío, tratamiento o rehabilitación], y se notifique su inclusión al Registro". *Pueblo v. Ferrer Maldonado*, supra, pág. 985.

A tenor con lo anterior, nuestro Tribunal Supremo concluyó en *Pueblo v. Ferrer Maldonado*, supra, que la aplicación retroactiva de las enmiendas introducidas por la Ley Núm. 243-2011 a la Ley Núm. 266-2004 no violan la prohibición constitucional en contra de la aplicación de leyes *ex post facto*. Así, resolvió que todas las disposiciones contenidas en las enmiendas introducidas por la Ley Núm. 243-2011 aplican de forma retroactiva, independientemente de si la persona que impugna su anotación en el Registro arguye que, en su situación particular, corresponde emplear el principio de favorabilidad, conforme a lo resuelto en *Pueblo v. Hernández García*, 186 DPR 656 (2012).

La controversia que hoy atendemos no es novel para nuestro Tribunal Supremo, más, sin embargo, por no alcanzar un consenso, no se ha pautado el Derecho.[6] En decisiones recientes se ha establecido que dicho Foro se encuentra igualmente dividido en cuanto a si una persona convicta por el delito de actos lascivos -ausente el elemento de minoridad en la víctima- debe o no inscribirse en el Registro de Ofensores Sexuales. Ello, a pesar de que en la acusación se desprenda que la víctima era menor de edad, pero se logró un acuerdo con el Ministerio Público mediante el cual se reclasificaron los delitos y se eliminó dicho dato.

De una parte, en la expresión de conformidad emitida por el Juez Asociado Estrella Martínez en *Pueblo v. Toro Vélez*, supra, este reiteró su posición en cuanto a que la *Ley del Registro de Personas*

---

[6] Opinión disidente de la Jueza Presidenta Oronoz Rodríguez en *Pueblo v. Toro Vélez*, supra.

*Convictas por Delitos Sexuales y Abuso contra Menores* no exime de inscribirse en el Registro de Ofensores Sexuales a las personas convictas de actos lascivos ausente el elemento de minoridad en la víctima.

Asimismo, de la Opinión de conformidad emitida por el Juez Asociado Rivera García en *Pueblo v. Toro Vélez*, supra, a la cual se unió la Jueza Asociada Pabón Charneco y el Juez Asociado Feliberti Cintrón, este expresó que el interés que tiene el Estado en garantizar la seguridad, protección y bienestar general no puede estar limitado por las ventajas administrativas que el mecanismo de alegaciones preacordadas le pueda brindar, tanto al Ministerio Público, como al Poder Judicial. En este sentido, enunció que: "La realidad es solo una. En ocasiones, podrá ser revestida y reinterpretada, pero aún así, permanecerá intachable y, sobre todo, indiferente a lo que el humano pueda opinar sobre ella."

Además, el Juez Asociado Rivera García manifestó:

> Entonces, si el objetivo de protección social contra delitos sexuales que provee el Registro no ha variado desde que este se estableció en el 1997, y que sus enmiendas han tenido la intención de fortalecer su misión, cabe preguntarse lo siguiente:
>
> i.  ¿Cuán compatible es el hecho de eliminar el delito de actos lascivos en general, sin minoridad, con la política pública que promueve nuestra legislación en pro del fortalecimiento y la efectividad del Registro?
>
> ii. ¿Cuán efectivo puede ser un Registro de esta naturaleza, cuando el mismo puede ser burlado fácil y constantemente por ficciones jurídicas ajenas a la realidad fáctica y motivadas exclusivamente por una negociación sobre la pena?

Por último, expuso que:

> [...] Si bien el peticionario fue favorecido al hacer alegación de culpabilidad, pues se le concedió el beneficio de sentencia suspendida, **el Tribunal de Primera Instancia, en la discreción judicial que viene obligado a ejercer al atender este tipo de procedimientos abreviados, condicionó el cumplimiento de la sentencia a que el peticionario se inscribiera en el registro y, además, a que no se acercara ni relacionara con personas menores de edad. Esta condición responde a un propósito**

**exclusivo, salvaguardar el propósito de la Ley del Registro, de manera que se garantice el bienestar de la sociedad ante la posibilidad de actos reincidentes de ofensores sexuales** como el señor Toro Vélez. (Énfasis nuestro).

Por otro lado, también en *Pueblo v. Toro Vélez*, supra, el Juez Asociado Martínez Torres, al interpretar la ley que regula el Registro de Ofensores Sexuales, concluyó que: "…[L]a Ley Núm. 266-2004 requiere que haya una convicción -por determinados delitos- para que se genere el deber de inscripción. Una acusación o denuncia es insuficiente. …[E]l crimen de actos lascivos, sin más, no es uno de los delitos que el estatuto reconoce para exigir la inscripción del convicto en el Registro."

**III.**

En esencia, el peticionario aduce que el TPI cometió un error de derecho craso y manifiesto al denegar su petición de eliminación de datos del Registro de Ofensores Sexuales, bajo una aplicación equivocada de la Ley Núm. 266-2004, según enmendada por la Ley Núm. 243-2011, y, amparándose en opiniones de conformidad emitidas por el Tribunal Supremo de Puerto Rico en *Pueblo v. Toro Vélez*, supra, (Sentencia), la cual no es vinculante. Arguye que, si no se expide el recurso de epígrafe, se permitiría que continúe inscrito en el Registro de Ofensores Sexuales hasta de por vida, a pesar de que el delito por el cual fue convicto no está expresamente enumerado en la mencionada Ley. Particulariza que el punto de partida para la clasificación de una persona como ofensor sexual sujeto al Registro es la convicción y no la información que surja de la acusación.

Por ende, el peticionario nos invita a que, bajo el principio de hermenéutica, obviemos la realidad fáctica que se desprende de las acusaciones presentadas por el Ministerio Público en el 2008 y únicamente nos centremos en la *Sentencia* dictada el 8 de agosto de 2008 para resolver la controversia que hoy se nos presenta. Añade

que el Poder Judicial no puede convertirse en un poder supralegislativo dirigido a juzgar la sapiencia o deseabilidad de las determinaciones políticas que establece la Asamblea Legislativa.[7] Discute que no debemos tomar en consideración una mera acusación para determinar si procede o no la inscripción en el Registro de Ofensores Sexuales, porque ello transgrede el texto expreso de la Ley Núm. 266-2004, según enmendada, y viola su derecho constitucional a la presunción de inocencia, toda vez que los delitos descritos en las acusaciones no fueron probados más allá de duda razonable. No nos persuaden sus argumentos.

En la presente causa, los hechos son claros; el peticionario fue acusado de cometer el delito de agresión sexual contra una menor de 14 años. Bajo una negociación con antelación a juicio, este suscribió una alegación preacordada con el Ministerio Público, mediante la cual se declaró culpable de un delito menor, y en este acuerdo, se eliminó el hecho de la minoridad de la víctima. Así, este resultó convicto por el delito de actos lascivos, sin más.

Un examen ponderado del expediente, el derecho aplicable y los argumentos de ambas partes, nos lleva a concluir que no intervendremos con la *Resolución* recurrida. Si bien la convicción del peticionario fue por el delito de actos lascivos sin el elemento de la minoridad, los hechos que surgen de la acusación penal, entiéndase, los 14 años de la víctima, no se pueden obviar y tornan obligatoria la inscripción en el aludido Registro. A su vez, de la *Sentencia* condenatoria del peticionario surge meridianamente claro que se le concedió el beneficio de una sentencia suspendida bajo la condición especial de que se inscribiera en el Registro de Ofensores Sexuales, no interviniera "con la menor [víctima]", ni mantuviera

---

[7] Citando a *Pérez, Román v. Proc. Esp. Rel. De Fam.*, 148 DPR 201 (1999).

comunicaciones con menores sin la supervisión de un adulto.[8] Ello denota que el Tribunal, bajo su discreción judicial, tuvo la intención de no invisibilizar la víctima menor de edad y salvaguardar el propósito del Registro, a pesar de aceptar la alegación preacordada que eliminaba el dato de la minoridad. Ahora el peticionario no puede actuar en contra de las propias condiciones especiales a las que se obligó allá para el 2008 con el objetivo de beneficiarse de una sentencia suspendida.

Además, la decisión que hoy tomamos se basa en una interpretación íntegra de la ley aplicable, y lo que más se ajusta a la intención legislativa de adoptar como política pública del Estado precisamente proteger a la comunidad contra actos constitutivos de abuso sexual y abuso contra menores. Lo anterior, sin importar la edad de la víctima.[9]

Así las cosas, somos del criterio que la determinación del foro primario no es contraria a derecho, ni se cometió un abuso de discreción, por lo que no intervendremos con esta.

**IV.**

Por las consideraciones que preceden, se expide el auto de *certiorari* y se confirma la *Resolución* recurrida. Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA AP. XXII-B, R. 40.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[8] Resulta evidente que de la propia *Sentencia* surge que se trata de una víctima menor de edad.

[9] Como se sabe, la Ley Núm. 243-2011 aplicable (según lo resuelto en *Pueblo v. Ferrer Maldonado,* supra) solo identifica distintas edades con el propósito de distinguir entre las tres (3) clasificaciones de ofensores sexuales (Tipo I, II y III).